The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Have a seat. Mr. Jones, we're happy to hear from you. Your Honor, may it please the Court, Mark Jones for Theodore Macon Carrington. The Supreme Court in Jackson v. Indiana identified the indefinite confinement of criminal defendants as a violation of due process. Congress responded to that by enacting the Insanity Defense Reform Act, the provisions of which are at issue here. In that act, Congress brought structure to the competency evaluation process, and it sought to end the problem of indefinite confinements by providing specified time periods within which the government must perform certain acts if it wishes to thereafter harness the power of the federal courts to civilly commit incompetent defendants it believes is dangerous. This Court's published opinion in WADA confirmed that the Attorney General has to comply with time limits of 4241D if it wants to commit those individuals. Here, the district court's order could not have been more clear. It gave the Attorney General a full four days to complete a competency restoration evaluation. Four months? Four months. I apologize. Four months, Your Honor. Yes. The Attorney General neither met that clear statutory deadline nor did it seek an extension. Can I just, just to make sure, I want to understand. When you say the four months, that's the August 21 order? Yes, Your Honor. Of 2021? Correct, Your Honor. Right. And you're not challenging that, the power of the district court to enter that order? No, Your Honor. Okay. The court had the power to enter that order? Yes. All right. And can I ask you then, because I feel like the briefs are sort of ships passing on the night. So on August 23rd, 2021, the district court says you have four months. In your view, when does that four months start ticking? August 23rd, 2021. Okay. What's your authority for that view? Because the government, I'm 95% sure, is going to tell me they think it starts ticking on January 18th, 2022. So I haven't seen, and I don't believe there's precedent that suggests that the four months starts ticking when the person makes it to the specific BOP facility that the Attorney General has decided that they want to place this individual. And this court in both Ueda and Curbo said we look at the order as the start date for that time period. And even Curbo, which cited Flannery, when you look at Flannery, it says you have four months to get this done from the order. Flannery went on to say that there may be times when the determination is made inside that four months, but there isn't a filing of that determination until later, and that's okay. But it doesn't make sense that when we're concerned about indefinite confinements, that we would allow a period of indefinite confinement if the BOP and the Attorney General is choosing, and then say it only starts when they get to the BOP facility. Can you tie that back to the statute for me? Because when I look at 4241D, right, D1 gives us for such reasonable time period not to exceed four months, right? That's what we're talking about, right? But that is describing, right, the first part of that sentence, which is hospitalized the defendant, right? And everybody agrees that he wasn't in the hospital on August the 24th of 2021, right? So the statute just says that you shall hospitalize for no more than four months. Yes, and so what the Attorney General is to do once it receives that order is to then hospitalize the person. Okay, where is that? Where is the requirement that the hospitalization must begin immediately? So where do I help point me to that piece because I just don't see that, right? So it says the court shall commit the defendant into custody of the Attorney General, right? And the Attorney General shall hospitalize for a reasonable time. That's right. No, no. And I think we have, and I think I'll say in this case and that I looked at WADA and I looked at CURBO, I guess what I'll say is the people at Butner, it seems to me, very clearly view the four-month period as starting to tick when people get to Butner. Because in this case, in CURBO and in WADA, the people at Butner consistently calculated it as ticking when the person gets to. Now, they seem to have trouble even under their own reckoning getting back to the district court in four months, but putting that aside, at least the government seems to consistently understand that it starts ticking when you get to the hospital. I agree. And here I think is a good illustration of the problem. Imagine the court were to say, appellant's reply brief is due in 21 days. And I then took five months because I had other cases, and then I filed it with the explanation, well, I only worked on it for the last 21 days. That simply wouldn't pass here. The BOP cannot decide. But there, there's an order that says you must do this in 21 days. Do this. File the brief. Here, it says you must do what within four months? Hospitalize. Determine competency, or in this case, determine restorability. It doesn't actually say that, though, right? It says the attorney general shall hospitalize for a reasonable time not to exceed four months. Right? If it said, so if we said, you know, something other than file the brief in 21 days, that's fine. But you're just changing the words. The purpose of 4241D1 is to allow the attorney general to make a decision, a determination, about whether or not an incompetent defendant can be restored. That is the operative thing to happen. During the hospitalization. That's correct. And what we are also concerned about is preventing indefinite confinements. And so in Jackson, the Supreme Court says no indefinite confinements. In this statute, the Congress gives specified time periods. And this court said in Flannery, and that's unpublished, that the four months is a codification of what Congress believed was a reasonable time period within which to complete the evaluation determination. So then can I, okay, so maybe you're right about this and maybe the government's right about this. I mean, I mean, I mean that honestly, because I think just to preview a question I'm going to ask the government, I think the statute is best read to say what I'm asking you. I don't know why reading the statute that way doesn't create massive constitutional problems. So just to preview a question that I have for the government on that. But say your view, your view is that the four month clock started ticking on the date of the district court's order. And that means I think in your view, September, October, November, December, September, October, November, December. So on your view on December 24th, 2021, the four month period had expired. And your client is not being properly detained under this D1 order. Correct, Your Honor. What steps did your client's lawyer at the time take to go to the district court and say, hello, criminal court? My client is now being detained in violation of the law because you committed him to the AG for four months for something to happen. It has not happened. Please at minimum come bring them in here and yell at them for the fact that it hasn't happened. Or maybe set him free because the period has expired. Why did your, I know that the lawyer did not in fact do that. So why isn't that a problem? It could be. I think in this case, we have an interesting wrinkle in that before that time period expired, the appointed counsel made a motion to withdraw in front of the district court, saying that this defendant has filed a Bivens action against me under North Carolina rules of professional conduct. I have a conflict of interest and continue to represent him. Please let me out and appoint new counsel. When was that motion filed? That is in the record at JA 154. I believe it was filed in September of 2010. So during what you think is the four-month period. That's correct. And the district court denied that, essentially saying, well, we're going to see what happens with competency. So we have a period of time in this case which may be unique in which Mr. Carrington has an attorney who's appointed who says, I can't represent him because of my conflict. The judge says, no, you stay in here, and nothing happens. And when does that get wrapped up? That doesn't get wrapped up until it comes back into the district court in August. And so then at Joint Appendix 239, we have a renewed motion to be let out citing these same basis, and that is the motion that is granted. Sorry, August of 2022? Yes, Your Honor. And then when the new counsel gets in, they then raise these timeliness issues. They raise weight up. They raise curbo. They do it in oral form during the restoration hearing. They do it in motion form. And the district court even says, you preserved it. You have done what you are supposed to do here. This is the brief filed on September 6, 2022? That's correct, Your Honor. What I'm calling the criminal court, not the commitment court, but the criminal court? Correct, Your Honor. And that you're representing is within some reasonable amount of time where the counsel thing has gotten all squared away? I believe so, Your Honor. What do you want this court to do? What does your client want? We believe that this court should vacate the portion of the criminal district court order that held that Mr. Carrington was subject to the provisions of 4246. And what will that do? It will be a ruling from the district court that because he's not subject to 4246. Whoa, whoa, whoa. Nope. It wouldn't be a ruling from the district court, right? It would be the absence of any ruling, right? Correct. So it would say instead he's incompetent and non-restorable, period. You agree the court had the authority to say he was incompetent and non-restorable in this September 22 order? Correct. Okay. So now that order, we strike that line from that order. We strike the line from the order. Tell me what happens differently. I think then having preserved the timeliness issue the way this court in Curbo said that a defendant must, then in the civil commitment proceedings, that timeliness issue is preserved and the civil commitment proceedings will have a different outcome. Well, hold on. Let me ask you that. So if you strike that, I mean, candidly, one question I have about what the court did in this case is whether it needed to do and what effect, if any, the fact that it did it, right? So when I read 4246A, I don't see anything saying the criminal court is supposed to make some sort of certification under 4246. The person who makes the certification is the director of the facility, not the district court hearing the criminal case. So, like, candidly, I'm not even sure what that sentence does as a legal matter. My sense is nothing at all. Well, and the other thing, I thought the indictment had been dismissed early on. No, Judge Floyd. No pending charge, is it? The indictment was dismissed after the court issued the order concluding that Mr. Caron was subject to 4246. After the indictment was dismissed, then proceedings went over to the Eastern District for civil commitment, Your Honor. So, back to my question, what does your client want? He wants this court to vacate the portion of the district court's order that said that he is subject to 4246. The challenge that defendants have... Can you tell me what in the world that matters? Like, I have no idea what that possibly matters. In the civil commitment context, we have been told by this court that we must... Defendants must raise these timeliness issues in the criminal district court. So, I disagree with that premise. That's not actually what the court says in Curbo, but fine. I'll even accept your premise. So, what? What does the subject of 4246 mean? Like, if we ignore it. If he said instead, like, I like green eggs and ham. Like, I have no idea what you think striking that language is going to do. The 4246 determination by the middle district had consequences for the defendant. What? What consequences? I'm trying to really be specific. What is going to be different if that language was stricken? If the district court had concluded that it was untimely. No, no, no, no, no. Don't change the hypothetical, right? I'm saying that language is not there anymore. What is different? And the answer is obviously nothing. That's the point. Right? Nothing is different. The eastern district could not have relied on the finding of the middle district that Mr. Carrington was subject to 4246. I thought you were going to say he walks out and be free. That too. I mean, he, you know. But on what basis? Then you could be here, right? Then we would have jurisdiction. If your guy wanted out and he had a basis for getting out, I totally understand that. That would be a custody order. Right? But you're not seeking to review a custody order. You're seeking to review a 4246 sentence. Right? I like green eggs and ham. I think Judge Floyd has identified it. It is the 4246 determination that is allowing the attorney general to continue to confine him. No, no, no. That's not true. There's 4246. I'm sorry, Judge. The 4246 continues his detention by virtue of the filing of a certificate from the facility. Right? That's what the end of 4246A says. He maintains in custody pursuant to the certificate filed on May 26th of 2022. Not anything the criminal court did. Not a single thing the criminal court did. We understood from Curbo that to challenge the timeliness, which Wade has said could result in release, or which could result in stopping the civil commitment proceedings from going forward because of the untimeliness, that needed to be raised by defendants in the criminal case. So here it is. If you're challenging an order of the district court that has effect, so in Curbo, right, there are three orders. There's a B-1 order, a first B-2 order, and a second B-2 order. Right? What Curbo tells us is that if you're challenging the authority of the district court to institute the first B-1 order or the second B-2 order, like, those have to be raised in the criminal court. But, you know, the time period after the second B-2 order, right, Curbo actually addresses the timeliness of filing the certificate. Right? That timeliness the court addressed in the civil matter, not the criminal matter. But here you've only got one order. Right? You've got a B-1 order. There is no B-2 order. Right? And that's why I asked you at the very beginning, are you challenging the district court's authority to enter the B-1 order? And your answer is no. Right? Correct. So any timeliness issue is for the civil commitment court to decide. We believe that Curbo said that those are to be raised in the district court, in the criminal district court. And the reason why they're to be raised, we believe the Eighth Circuit Ryan decision is persuasive. It said the court that entered the B-1 order is in the best position to rule on the timeliness issue. But you agree that B-1. I'm sorry. Go ahead. No, I was saying, I take that point about Ryan. And I would say one thing that's very concerning to me about a lot of these cases, I mean, this is all within the Fourth Circuit. Here both the criminal court and the civil court are in the Fourth Circuit. But if you look at Curbo, that's not the case in Curbo, and it's not the case in Ryan. And so this is, this strikes me as an area where a circuit split about how to do this would be a uniquely bad thing because of the reality that often the civil and criminal courts are literally different circuits. But I looked at Ryan, and I think Ryan maps onto what Judge Richardson said as well there. Because as I understand, Ryan was making the version of the argument that says they had four months, but they didn't make the certification until four months and three days. And at that point, you can't make the 4246 certification because the fact that it took you too long. So I feel like that maps onto the distinction, unless I'm missing something, that it maps onto the distinction Judge Richardson is wrong. Do you have a thought on that? I don't. No, but the challenge that we have here overall is that we're having these periods of indefinite confinement that are only turning into the four-month period as allowed by statute and ordered by the court when the Bureau of Prisons unilaterally decides that they're going to take somebody. And so we're moving from a period in which... Totally fair, right? That is an argument, right? Might be right, might be wrong. That is an argument, but that argument belongs in the civil commitment court, right? That's the very point because the district court, the criminal court's order, the B-1 order was itself valid. And your argument is they didn't file their certificate in time, right? And so you've got an argument about that. When was hospitalization? When does it matter? Is it too long? Totally get it, right? Our question is not whether that is a reasonable, valid, or correct argument. We can all have views about it. The question we have is where do you make that argument? And we understood we were to make that argument for any D period, 42-41D period, in the district court because we understood that's what Curbo said. And the challenge we've run into... And if you understood Curbo wrongly, right? I mean, I don't think that Curbo says that at all. I don't think Ryan says that. I don't think that's what the court said because Curbo itself addresses the timeliness question, right? The very first part of Curbo is it's addressing the timeliness question of when the certificate was filed. It says we can decide that question from the last criminal court order, the second D-2 order, to the time of the certification, right? In that instance, the civil commitment court gets to decide that time period. What it doesn't get to decide are the time periods that predate the last district court order. And the language that I would read to the court from Curbo on page 115 says, simply put, the proper time and place to contest the alleged unreasonable delays in the first and second periods of Curbo's 42-41D custody were during the Mississippi proceedings in the Mississippi court. A hundred percent. That's exactly right. Not the third period, right? What you're in is you're effectively challenging the third period because it's after the last order of the criminal court, right? You don't have a first and second period, right? Because that's a challenge to the district, the criminal court's power. I think we only have two periods. We don't have a third period. We don't have a 42-41D-2 period. D-2 period. That's exactly right. You have no D-2 period. That's right. So we're not doing a reasonableness analysis. We're strictly looking at, did you comply with the court's order? And the court that entered that order, we believe Curbo said, is in the best position to determine whether my order was violated. Can I ask you, so am I correct, just as a factual matter, that you also represent Mr. Carrington in the civil appeal that is, I know, before us as well? I do, Your Honor. And that's part of the challenge we have is that here the government says, you can only get this in the civil case. And in the civil case, they say repeatedly, you can only get this in the criminal case. You've preserved it, and that's where you need to go. So in terms of, let's assume for the sake of argument that I think the district court in the criminal case didn't need to, probably shouldn't have included the line that you now want struck. But I think you've been developing it, but I just want to make sure I understand. Your argument is that as a result of the district court in the criminal case saying that, rightly or wrongly, there was some version of the civil court felt bound, permitted to rely on. The concern is that it's not as if we, I was like, why don't we just pretend the criminal court never said that? And that was because we have no confidence that didn't affect the entire course of the civil litigation where everyone thought the criminal court had decided it. I will say, in fairness to you, there is some language in Curbo that to me sure suggests that you should do this in the criminal case. Whether it's right or wrong, I totally see how people would have thought that. And so is that the concern, is that even if we conclude it ultimately is the civil context, there is some harm from this language in the criminal case because it exerted this sort of gravitational effect on the civil case? Yes, Your Honor. But isn't that just like, I don't mean this in a bad way, but like, that's just an error of law. Like, that's just the lawyer making an error of law. And I don't mean this in a disparaging way at all, right? I'm not suggesting that Judge Hydens is wrong. This is hard, right? But, you know, there was a choice made not to raise the challenge in the civil case, right, not to raise the timeliness challenge in the civil case. And that that might have been a plausible reading of Curbo. But if it's the wrong reading of Curbo, it's the wrong reading of Curbo. I take the court's point. You know, we do have our position is that the ruling of the district court did have import in the civil case and that this would be the appropriate place to address it. Where would I look in the civil commitment case to see the district judge there abdicate its decision-making authority to the criminal court? Like, is there anywhere in the record that suggests that the district court judge in the civil commitment case threw up his hands and says, nope, I'm totally bound by the decision made by the criminal court? No, Judge Boyle did not make any such finding in the record. What happened procedurally is the Eastern District, after the filing of the Dangerousness Certificate, stayed its case until the conclusion of the Middle District case. And then after the findings here, it all went back to the Eastern District. And in the Eastern District, you could have made whatever arguments you wanted to make. That's correct. Having raised this as they understood Curbo to have required them to do. Right, because in the criminal case, and we'll let you sit down, we've taken you wherever. But in the criminal case, what the counsel asked for was we want to raise this so that the civil commitment court can decide it, right? That's what the briefing says. We're raising this issue, but we don't need you, criminal court, to decide it. We want the civil commitment court to make that decision. I think that's a fair reading of what attorney said, although it's also true that Curbo, I'm sorry, Carrington himself said, you have held me longer than you're allowed. Totally fair, but we got to rely on what the lawyer said, right? The lawyer said, let the civil commitment court handle it, right? We get to the civil commitment court, and they don't raise a timeliness argument, right? So in the criminal case, they say, no, put it, I mean, I get, you might say, the government's talking out of both sides, right? But it seems like so is Mr. Carrington, because in the criminal case, he says, no, decide this in the civil case. And then in the civil case, he doesn't even raise the argument, right? So it's a catch-22 for both sides. I think the best reading is with Curbo out there, the understanding was that you are to raise this, as Curbo said in the paragraph that I quoted, in the district court that made that order, made the second 4241D1 ruling about how much time you get. Thank you, counsel. Ms. Niemeyer, we're happy to hear from you. May it please the court. We don't contest that the defendant preserved the issue of delay in the criminal court, but the relief that the defendant seeks vacating this language in the order that the defendant is subject to 1842-46 is simply not available in this appeal. It's not available for two reasons. This court simply doesn't have jurisdiction over that particular issue. And secondly, even if this court did have jurisdiction to consider that issue, that language was entirely proper. And as Judge Heitens pointed out, in fact, that language wasn't even necessary for the district court to carry out its duty to determine the defendant's restorability. Can I ask you a hypothetical? Yes, your honor. Maybe it's not hypothetical, but we're going to call it hypothetical. So imagine we basically got this case, right, and everything looks like this case, the exception being in the civil commitment court in front of Judge Boyle, Mr. Carrington argues that the certification was untimely, right, and that the delay getting him to the hospital and the delay in the hospital, that those combined, and that created a timeliness problem, and a la Curbo and Wada, this sort of last time period the civil commitment court can review. Do you agree that Judge Boyle could have addressed that issue without any interference or impact of the criminal court? Absolutely, your honor, because that's that court's province to determine if the defendant was properly subject to 4246, whether he was properly eligible for 4246 commitment. The defendant would have to fall into one of those three categories. Can I go one step further and say not only would Judge Boyle be allowed to and permitted to, if Judge Boyle had purported to defer to the criminal court in that instance, that would have been a legal error to do that? To basically treat that sentence in the criminal court's order as anything other than I like green eggs and ham, that for purposes of the decision Judge Boyle had to make, that sentence is legally irrelevant and relying on it would be a legal error. I agree, your honor, yes. So then why the heck did the district court in the criminal case go and say it and seem to create all kinds of unnecessary confusion? Because normally when district courts say things, we think the thing they're saying does something. Your honor, that's a good question. I think the reason that it was said in this case is because the particular timing of this case, the 4246 certificate had already been filed when the district court issued that order on September 15, 2022. Right, so I agree he was subject to the provisions of 4246 perhaps because the director had made the certification, but he's not subject to because of anything the district court says under your view, right? He is subject to it to be considered under that statute simply because the district court found him unrestorable. So by operation of the statute, once a defendant is found incompetent and unrestorable, the only other result is for consideration under 4246 or 4248. It's to state, I mean, you know, we do tend to think that district judges and us as judges, when we say things, they matter, but we often say things that are just true, right? We describe the facts of a case, right? And we're going to write an opinion. We're going to describe a little bit about Mr. Carrington, not because our description of Mr. Carrington has legal effect, but because we're just describing what is, like, true in the world, and that sets in context the rest of our order, right? And so if you're a district court judge and you're saying, listen, this guy's incompetent, he's nonrestorable, the result of that is going to be I'm going to dismiss the indictment. But, hey, public, if you're reading this and trying to understand what's happening in my courtroom, you should understand as a factual matter, not as a legal decision, but as a factual matter, he is subject to the provisions of 4246. Absolutely, Your Honor. That is exactly the government's position. Can I? Yes, Your Honor. So, I mean, again, this is a little bit of a no one's happy entirely about how we got here. In the civil commitment court, did the government attempt to affirmatively establish that the 4246 certification was timely? As a descriptive matter, if I look at the briefs you filed in the civil commitment court, did you attempt to convince Judge Boyle that this was timely? I believe so, Your Honor. I have to say I'm not an expert on the civil record, but I believe so. My concern is whether everybody was— You're not—he's counsel—you're not counsel in the civil case. That's correct, Your Honor. Sure. I mean, it's fair to say it seems obvious that these provisions are pretty— these appeals are very closely interrelated to each other, right? Because your argument in this case is he can't do it here because he's got to do it over there because he had to do it over there. That's basically the argument you're making, right? Yes, Your Honor. And I would assume that we'd be entitled to assume that if we were to have an oral argument in the civil appeal, the government would not get up and say, turns out he was not allowed to make it in the civil case because he had to make it in the criminal case. I assume you've coordinated with counsel in the civil case to that extent. Yes, Your Honor. Okay. The key here is that the district court in our case, in the criminal case, was charged with determining whether the defendant was competent, and if not competent, whether he was restorable. That's exactly what the district court did in this case. Can I take you back to where I started with your friend on the other side? Again, was my 95 percent supposition right that you're going to tell me that the four-month period doesn't start until he gets to Butner? That's correct, Your Honor. Are you—so I've looked, and here's what I guess I'll represent based on my law clerk's research. If you want to find cases that assume without analysis it starts on the day of the commitment order, I can find cases that assume without analysis it starts on the day of the commitment order. If you want me to find cases that assume without analysis it starts on the day he gets to the hospital, I can quote you those cases, too. Are you aware of any case that actually addresses that question by any court? I am not, Your Honor. Okay. Second, I guess, related question on that. My biggest concern, I think, is a matter of how the statute reads. That's probably right. Why doesn't that create a massive constitutional problem? I mean, let me just give you a hypo, right? This individual—here's how a totally innocent person ends up in interminable government detention. A person with a severe mental illness is found near or around the scene of a crime. There's probable cause to arrest them with a crime, but this person is totally, 100 percent innocent. But then they're brought in for a competency. So then they get a public defender, and that public defender goes, wow, I think this person might have a serious mental illness, so we should do a competency evaluation, which is a good idea because the dude is definitely not competent. So then he's sent for a competency evaluation under 4241A, and lo and behold, it comes back. And I don't say this with deliberate disrespect, but I've now had been on enough of these in two years. Those sometimes take a while. So that takes a while. It takes a while to determine that he's not competent to stand trial. He then gets committed for a restorability determination. And I've been in enough of these to know, too, that regardless of who's right or wrong, those sometimes take a heck of a lot longer than four months. In the real world, you and I have the Tucker case, and maybe it's medication, and we're not sure what medication he should do, and maybe he's resisting taking medication because he's mentally ill. So it takes a heck of a long time to determine if he's restorable, and we're litigating whether he's restorable, right? And it takes eight months to get him to Butner, and now, before you know it, a completely innocent person has spent, like, seven years in pretrial detention. Why shouldn't I be really worried about considering the statute in a way that would allow that to happen, given that this statute was literally designed to prevent the federal system from having the constitutional problem at issue in Jackson? Your Honor, it is an important issue. It's a problem, and maybe Congress should take further action to further prescribe the timelines. We don't have that guidance yet, but I think from a due process angle, it comes down to reasonableness. No, but I guess, oh, here's what I'll say. Again, I think you probably have the better reading of the statute, that the four-month period doesn't start ticking until he gets to Butner. I think that's probably the better reading of the statute. I'm not sure it's the inevitable, only conceivable interpretation of the statute, and at some point the constitutional avoidance cannon kicks in and says, I can construe this statute to authorize four months total to make this determination. And notice, it's not a hard limit, because you can get a D-2 certification. If it's taking longer, you can go back to the district court and get a D-2 certification. So that's part of the backstop. I can construe the statute that says either you get four months to do the whole thing unless the district court gives you an extension, or you get a completely unconstrained period to get him to the hospital for which there is no statutory restriction whatsoever on how long. I mean, here it's five months, but under your reading of the statute, it could take 10 years under the statute, right? And there'd be no statutory restriction on that at all. And then you get four months at the end of whatever that completely – and so there's an argument to say, I should probably construe the statute to not authorize the 10-year detention at the front end. Why shouldn't I do that? Well, Your Honor, I think the answer to that is the four-month hospitalization period has to be construed only to apply to hospitalization because there are other processes that the court has to conduct outside of hospitalization. It's not on the front end, but on the back end. What does that have to do with how long it takes you on the front end? Well, because the rule would have to apply equally to all, to the whole period. No, no, no, no, no, no, because the rule that I would say is when he's committed to the custody of the AG, you presumptively get a period of about four months to get back to the district court whether you think this individual is restorable. But fear not. I realize that in the real world, sometimes that won't work out. And if this is one of those situations where it doesn't work out, go back under D2 and ask for more time. But then at least the district court is going to give you more time rather than the government. I mean, in addition to my other concerns about the 10 years to get to Butner problem, is there's literally no district court oversight under the statute under that process of your view. I mean, yes, he could go to the district court and say they're taking forever to get me to Butner, but there's nothing that affirmatively ever requires the government to go back and ask for more time under your reading of the statute. You're right, Your Honor, but the defendant does, as you say, have recourse. If at some point in time, the length of time in getting to Butner or getting to the other facility is simply too long, the defendant can ask for a writ of mandamus. The defendant can file a petition for habeas. The defendant has recourse. Because there are two different stories, right, that you can be held in violation of the statute or the Constitution. And if there's an example where you're held for 10 years, I venture to say far short of 10 years, I think lots of people would say under Jackson, you are being held in violation of the Constitution. And so there are still constitutional limitations. This isn't a constitutional avoidance question. It doesn't strike me, right? It's a question of is there still a constitutional violation? Can you comply with the statute and still violate the Constitution? Of course. Sure you can. I agree, Your Honor. But in this case, on these facts, there was no violation, either statutory or constitutional. It's true. Well, whoa. Can I ask you a couple? It's not quite that. Again, don't be more aggressive than you have to be, right? Like, it was longer than four months, right? Even when he was at Butner, right, it ended up being four months and two days, I thought. Your Honor, I believe the Butner hospitalization ended as scheduled, May 15th. He remained at the Butner complex, but he was not hospitalized past May 15th, to the best of my knowledge. So I think my other sense, as a descriptive veteran, when I read these cases, the folks at Butner seem to very clearly view the day he checks in as day one. But they also, in these cases I'm reading, pretty consistently view the four-month deadline as the deadline to make their internal recommendation, not their day to tell the district court. Because I think in this case, I think in Curbo and in Weta, they keep not telling the district court within four months. I've seen multiple cases where I've observed that. Am I wrong in that? I think that is accurate, Your Honor. In this case, it did come very shortly thereafter. I believe the report is dated May 20th, 2022. As a former government lawyer, I say this with no disrespect. The government constantly, constantly asks courts to hold it against private litigants that they miss deadlines by a day or two or three. It's just troubling to me here that the folks at this facility are seen to treat this four months as get it in around four months. Well, so I thought your response to that would be different, right? The four-month deadline doesn't apply to a report. It applies to hospitalization. Yes, Your Honor. You may hospitalize somebody for four months. So that means on the four-month deadline, whatever that is, like May 15th, you must let the person out of the hospital. Yes, absolutely. If I answered other than that, I was misunderstanding Your Honor's question. And then the report, there may be some broader timeliness, but it's not the four-month period because the four-month period applies to hospitalization. Correct, because that's the statutory language. But you, I'll ask you to agree. You agree that if they ended hospitalization at four months and four years later they hadn't submitted a report, we would have a constitutional problem. That would be a problem, yes, Your Honor. It might not be a statutory problem, but it's a constitutional one. Definitely, Your Honor. But that's not what happened here. That was timely. I acknowledge that. What are your orders to do? Your Honor, I would ask that the appeal be dismissed on the basis of lack of jurisdiction. There's two orders being appealed here. The first is the order of the district court finding the defendant unrestorable. And the second is the order dismissing the indictment without prejudice. Neither one of those is appealable. The order dismissing the indictment without prejudice is not an appealable final decision. It's a dismissal without prejudice. There is no judgment. Conceivably, an indictment could be refiled in the future and there would be a final judgment if the case is ever tried. The other order, the order finding the defendant unrestorable, is not an appealable collateral order. Can I go back to the constitutional avoidance and whether we really have this out? You agreed that there is no inherent authority to detain people that the federal government possesses, right? Correct, Your Honor. So if you're holding someone against their liberty, you need some statute that authorizes you to do that. Of course, Your Honor. So if I hold someone for 10 years between the time of the commitment order and getting to Butner, there has to be a statute authorizing me to do that. Yes, Your Honor. And under your construction of this statute, this statute authorizes. It not only doesn't forbid me from doing it, it affirmatively authorizes me to do that, right? Yes, Your Honor. And so therefore, this statute under your construction authorizes me to do something that would violate the due process clause. It provides the legal authority to do something that is unconstitutional. Under your construction. Now, there's a construction that it doesn't, but under your construction, it does, right? The statute authorizes the commitment to the custody of the Attorney General, but that still must comply with the Constitution because. So the same thing with the Bail Reform Act, right? Exactly, Your Honor. It allows a judge, based on certain findings, to commit you to custody. If that custody then lasts too long, you have a constitutional problem. But it doesn't allow you to do something that is unconstitutional at the moment you enter the order. The continued existence of that order might at some point become unconstitutional in the same way that it might authorize you to be committed to custody. But that custody might violate the Constitution because it might be an Eighth Amendment, cruel and unusual story. We can imagine lots of different constitutional problems that might result as a nature, but that doesn't mean that the statute itself is unconstitutional. Absolutely. In this case, Curbo was also detained during this entire period pursuant to a pretrial detention order, right? Yes. Yes, Your Honor. Mr. Carrington would have been detained regardless under the Bail Reform Act. And here, we are simply not talking about an unconstitutional period of time. We had one 42-40-41 hospitalization period. One. In Curbo, we had two. In Tucker, we had five. Here, it was one and done. He was found unrestorable. The 42-46 certificate had already been filed before he was found unrestorable. The process then turned over to the civil case. And so, therefore, an appeal of this order, there is just simply no jurisdiction to consider it. The relief that the defendant is seeking here is only available in the civil case. So what do I do with the language? I suspect I know what one of my colleagues thinks, but I'm asking what you think. What do I do with the language in Curbo that simply says, simply put, the proper time and place to contest things like this is in the criminal court? That's exactly what happened here. Mr. Carrington did object to the delay in the criminal court. It just strikes me as a weird state of affairs to say you should raise the objection in the criminal court, but then we should adjudicate the issue in the civil court. It seems a little strange. I see what you're saying, Your Honor. If there had been delay, and then let's say Mr. Carrington had been injured by that delay because then there was a 42-41-D2 order subjecting him to further commitment, then that delay would be very important. He would be injured by that delay. But here, we don't have a second period of commitment, a second hospitalization. We only had one. And so he hasn't been injured by any putative delay. Why did it take five months to get this gentleman to Butner? Well, Your Honor, this was late 2021. And so we were still kind of in the aftereffects of the COVID period. And I know that there's just enormous waiting lists for this type of evaluation to occur. There's just that many defendants that need an evaluation. I guess I will say as a former government attorney, I do not mean to shoot the messenger here, but this is now the second of these cases I'm on where people seem a little loosey-goosey about getting people evaluated in a timely fashion in a situation where there are very serious due process liberty interests at stake. And it is, I'll say, troubling, at least to this person, that we sometimes seem loosey-goosey about proceeding with pace when we're literally holding a person in violation of their liberty so that we can decide whether they're competent. And then we hold them for months and months and months in order to determine whether they are competent. Absolutely, Your Honor. It seems like there are real due process implications at stake. And again, I know I'm only seeing a small part of the world, but I'm concerned that it seems to me that sometimes these cases are not treated with a recognition of the significant due process interests at stake. Yes, Your Honor. Absolutely. If there's no further questions, the government requests that the appeal be dismissed. Thank you, counsel. Mr. Jones, we're happy to hear from you. Thank you. Briefly, Your Honor, the delay here for five months between the order and making the way to the we think because FMC Butner is geographically inside Durham County, which is in the middle district, and they were holding Mr. Carrington at a local county jail just 18 miles away. So it doesn't seem like there should have been any difficulty. But she's not suggesting that they had a transport problem, right? What she was suggesting is that they didn't have room at the inn, right? Whether they could get in there or not is not the question. You've got to have room at the inn. The fact that the donkey gets you there doesn't get you home, right? Right. And room at the inn here is entirely controlled by the attorney general who designates what a suitable facility is. And they keep seeing this delay occurring where people are sitting for months. And in this case, in the original competency hearing, one of the witnesses said, we may not get him to the hospital for five months. And the defense attorney at the time said, Judge, we're really concerned about this. Totally. I'm not I'm not disparaging the argument that it took them five months. What I'm saying is this proximity to Butner doesn't seem to be the issue. Right. You started by saying, oh, he's really close. And I'm just saying I understand the arguments. That doesn't seem to be one of them. The district court here identified getting people to and from and transport issues in connection with COVID as being the reason for the delay, because Mr. Carrington said he said the district court, the civil court, the criminal court, the criminal court here also identified. He said there are problems with COVID getting people to and from with transporting people in and out. So the district court identified that transport issue, I think, unfoundedly as being a basis for the delay here. Well, we've spent a lot of words here the last half hour, 45 minutes. Ms. Niemeyer proposes a very simple solution to dismiss the case because we don't have jurisdiction. So what about that? We believe that there is jurisdiction either under the final order doctrine of 1291 or the collateral order doctrine of 1290. Do we have authority for that? I do, Your Honor. This court has held in curvo that a competency determination under 4241 and 4246 is an appealable collateral order. And had the district court. It is an appealable collateral order where it is a custody order. So where it's a 4241D1 or 2 order, you're appealing from one of those. Then it's a custody order. And then it's keeping your client in custody. Right. So that might be an appealable collateral order. But a factual statement that your client is subject to 4246 is not a custody order. I think we recognize here, Your Honor, that we have two pieces because of the civil commitment.  He asked to be released. The attorney general has no authority to continue to hold him because of the untimeliness issue here. And he raised that in the district court. And I think this goes to what Your Honor was saying about statements about the case and findings. Carrington's attorney said, you can't find that my client is subject to 4246 because of this untimeliness issue. And the court, in its order, made findings and said things about the case. But then it moved on JA301 to a section where it was making legal conclusions and ordering things. And that's where it said it is further ordered that the defendant is subject to the provisions of 18 United States Code section 4246. It is that part of the district court's order that we believe falls under the collateral order doctrine that can be appealed. And the reasons we've stated in our reply brief, in our opening brief, and in the response to the motion to dismiss, we do think this court has jurisdiction to determine whether or not that was an accurate statement of law. And we think that the import of that misstatement of law had an impact and does have a continuing impact in the civil commitment case. The court, I think, has identified the real problem, which is that for a statute designed to stop indefinite confinements, it appears under the reading that Your Honor suggested that there can be an indefinite confinement. Then there can be a four-month period of hospitalization. Then another indefinite period of confinement and a report issued at some undetermined time in the future. And that in no way violates the structure, the purpose, or the text of 4241D. And we believe that's not the best or appropriate reading of the statute. For all those reasons, Your Honor, we would ask that the court vacate the portion of the district court's order finding, or striking, sorry, Your Honor, ordering that the defendant is subject to the provisions of 4246. Thank you. Thank you so much, Counsel. We very much appreciate you being with us. We ask you to come up here and greet us. And we'll ask the clerk to adjourn the court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Julius N. Richardson, Toby J. Heytens, Henry F. Floyd